FILED

JUN 2 3 2026

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) **I N D I C T M E N T** |
| | ) |
| Plaintiff, | ) |
| | ) **1 :26 CR  308** |
| v. | ) |
| | ) CASE NO._____ |
| | ) Title 18, United States Code, |
| JUNERA LASHAE HOLT, SR., | ) Sections 1028A(a)(1), 1343, |
| DIVANTE HOLT, | ) 1344, 1349, 1957, and 2; |
| RICHARD HENRY, | ) Title 26, United States Code, |
| | ) Sections 7206(1) and 7206(2) |
| Defendants. | ) **JUDGE PEARSON** |

GENERAL ALLEGATIONS

At all times relevant to this Indictment, unless otherwise specified:

Defendants and their Fraud Conspiracies

1.     JUNERA LASHAE HOLT, SR. ("JUNERA HOLT"), resided in or around Lorain, Ohio, in the Northern District of Ohio, Eastern Division.

2.     DIVANTE HOLT resided in or around Lorain, Ohio, in the Northern District of Ohio, Eastern Division, and was JUNERA HOLT's son.

3.     RICHARD HENRY resided in or around Lorain, Ohio, in the Northern District of Ohio, Eastern Division, and was JUNERA HOLT's son.

4.     Defendants orchestrated two conspiracies that submitted fraudulent applications and claims that sought more than $5 million in government funds, obtaining both tax refunds and COVID-19 pandemic stimulus funds through identity theft, the use of Shell Entities (defined below), and numerous misstatements.  In the tax fraud conspiracy, the conspirators filed numerous false claims with the Internal Revenue Service ("IRS") in their own names and the

names of the Shell Entities and identity theft victims, claiming approximately $1,533,395 for tax years 2019 through 2022. Defendants used the Shell Entities as purported employers for falsified Forms W-2 submitted with personal income tax returns, claiming non-existent federal tax withholdings to generate refunds, both for themselves and for claims submitted in the names of other persons, including refund claims for identity theft victims that they directed to themselves. Defendants also made fraudulent claims to the IRS on behalf of the Shell Entities for tax years 2020 through 2022, claiming COVID-19 pandemic-related employee retention credits for non-existent employees.

5. Defendants also engaged in a wide-ranging conspiracy to obtain COVID-19 pandemic stimulus funds intended for persons who lost their jobs due to the pandemic (Pandemic UI, defined below) while at the same time defrauding taxpayer funded programs for small businesses attempting to continue to employ their workers. From in or around May 2020, through in or around February 2022, Defendants sought approximately $3,273,455 in Pandemic UI benefits by submitting fraudulent applications, often to multiple states, for the conspirators and in the names of identity theft victims, including many of the same victims whose identities they used for the submission of false tax claims. In addition, in 2021, Defendants submitted fraudulent loan applications seeking at least $337,645 in U.S. Small Business Administration ("SBA") Paycheck Protection Program ("PPP") loans for purported small businesses.

Relevant Entities

6. The IRS was an agency of the United States Department of Treasury responsible for administering the tax laws of the United States and collecting taxes owed to the United States, including employment taxes.

2

7. The SBA was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses, including through the PPP and the Economic Injury Disaster Loan ("EIDL") program. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

8. Bank 1 was a federally insured financial institution headquartered in Minneapolis, Minnesota. Bank 1 had branch offices located in the Northern District of Ohio. HENRY controlled a personal bank account at Bank 1 ending in 1005.

9. Bank 2 was a federally insured financial institution headquartered in Charlotte, North Carolina. Bank 2 had Automated Teller Machines ("ATM") located in the Northern District of Ohio.

10. Bank 3 was a federally insured financial institution headquartered in Cleveland, Ohio.

11. Bank 4 was a federally insured financial institution headquartered in Pittsburgh, Pennsylvania. HENRY and Person 4 owned and controlled a personal bank account at Bank 4 ending in 1521.

12. Bank 5 was a federally insured financial institution headquartered in Austin, Texas, that provided prepaid debit cards, checking accounts, and mobile banking services.

13. In or around the following months, JUNERA HOLT caused the following entities to be created in the following individuals' names (together, the "Shell Entities"):

| Listed Individual | Established Date | Entity Name |
|---|---|---|
| Person 1 | 07/2009 | Shell Entity 1 |
| JUNERA HOLT | 10/2010 | R & J Southern Style Cooking LLC |
| Person 1 | 05/2012 | Shell Entity 2 |
| Person 2 | 05/2015 | Shell Entity 3 |
| Person 3 | 08/2016 | Shell Entity 4 |

| Listed Individual | Established Date | Entity Name |
|---|---|---|
| Person 1 | 02/2017 | Shell Entity 5 |
| DIVANTE HOLT | 09/2017 | Neighborhood Convenient Store LLC |
| JUNERA HOLT | 01/2019 | Uhuru Logistics LLC |
| DIVANTE HOLT | 01/2020 | Eugenes LLC |
| JUNERA HOLT | 08/2020 | R & Js Neighborhood Stop N Shop LLC |
| JUNERA HOLT | 11/2020 | R and Js Used Car Sales LLC |

### The COVID-19 Pandemic in the United States

14.     In or about January 2020, the Secretary of the United States Department of Health and Human Services declared a national public health emergency under Title 42, United States Code, Section 247d because of the spread of a novel coronavirus COVID-19 within the United States.  On or about March 13, 2020, the President of the United States issued Proclamation 9994, declaring a national emergency beginning on or about March 1, 2020, because of the rapid spread of COVID-19.  On or about March 18, 2020, the President signed the Families First Coronavirus Response Act ("FFCRA").  On or about March 27, 2020, the President signed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act into law.

### IRS Laws and Obligations

15.     A Form 1040, U.S. Individual Income Tax Return ("Form 1040"), was a tax return filed with the IRS in the name of a taxpayer that reported, among other things, the taxpayer's income, deductions and credits, and the amount of tax owed or tax refund claimed.

16.     A Wage and Tax Statement, Form W-2 ("Form W-2"), reported wages paid by an employer to an employee and taxes withheld from those wages.

17.     The IRS e-file program allowed tax preparers to electronically file Forms 1040, as well as related Forms and Schedules, with the IRS on behalf client-taxpayers.  The IRS required tax preparers to have a valid, authorized Electronic Filing Identification Number ("EFIN") to

4

electronically file ("efile") tax returns for client-taxpayers. Without a valid, authorized EFIN, the IRS's systems would not accept an electronically filed return.

18. In addition, anyone who prepared or assisted in preparing federal tax returns for compensation was required to have a valid Preparer Tax Identification Number ("PTIN"). A paid tax preparer was required to place their PTIN on each tax return they prepared for a fee to identify the preparer of that tax return.

The COVID-19 Related Tax Credits

19. The CARES Act provided for an employee retention credit ("ERC"), a refundable tax credit, designed to encourage businesses to retain employees on their payroll during the COVID-19 pandemic. The Taxpayer Certainty and Disaster Tax Relief Act of 2020 and the American Rescue Plan Act ("ARPA") modified and extended the ERC.

20. For calendar year 2020, eligible employers were authorized to claim an ERC offsetting certain employment taxes that could not exceed 50 percent of up to $10,000 of qualified wages paid to each employee from March 13, 2020, through December 31, 2020. The maximum ERC was $5,000 per employee for calendar year 2020. For calendar year 2021, eligible employers were authorized to claim an ERC offsetting certain employment taxes that could not exceed 70 percent of up to $10,000 of qualified wages paid to each employee during each quarter. The maximum ERC was $7,000 per employee per quarter for calendar year 2021.

21. Generally, businesses and tax-exempt organizations that qualified for the ERC were those that: (a) were shut down during 2020 or the first three calendar quarters of 2021 by government order due to the COVID-19 pandemic; (b) experienced a specified decline in gross receipts during the eligibility periods during 2020 or the first three calendar quarters of 2021; or (c) qualified as a recovery startup business for the third or fourth quarters of 2021.

22. The ERC could be claimed by an employer by filing one of three forms. The first form was an Employer's Quarterly Federal Tax Return, Form 941. The Form 941 required an employer to provide the IRS information about the number of employees the business had and the wages paid by the business during that quarter. The second form was an Employer's Annual Federal Tax Return, Form 944. The Form 944 required an employer to provide the IRS information about the number of employees the business had and the wages paid by the business during that year. Employers who used Form 941 reported wages and taxes four times per year. Employers who used Form 944 reported wages and taxes once per year. The third form was called the Advance Payment of Employer Credits Due to COVID-19, Form 7200. The Form 7200 required an employer to provide the IRS information about the number of employees the business had and the wages paid by the business during that quarter.

The Paycheck Protection Program

23. The CARES Act also authorized up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"), which was administered by the SBA.

24. To obtain a PPP loan, a qualifying business had to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including that the business was in operation and either had employees for whom it paid salaries and payroll taxes or paid independent contractors, and was required to provide, among other things, its average monthly payroll expenses and number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. A

6

business applying for a PPP loan was required to provide documentation showing its payroll expenses, such as filed federal income tax documents.

25.     A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies. While it was the participating lender that issued the PPP loan, the loan was 100% guaranteed by the SBA.

26.     Sole proprietorship applicants (including a self-employed individual, also known as a "Schedule C business") could use the proprietorship's annual gross revenue as the "payroll" figure and were not required to provide documentation in the same manner as other applicants. Some versions of the application form specifically directed applicants to enter the gross revenue from a particular federal income tax form.

27.     PPP loan applications were electronically submitted or caused to be submitted by the borrower and received through SBA servers located outside the State of Ohio, in Virginia or Oregon. Once approved, the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a financial account under the control of the business.

28.     PPP loan proceeds were required to be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

## Background on Unemployment Insurance

29.     The Social Security Act of 1935 initiated the federal and state unemployment insurance ("UI") system. The UI system provided temporary financial systems to eligible lawful workers who were unemployed through no fault of their own. The purpose of the UI system was

7

twofold: to lessen the effects of unemployment through direct cash payments to laid-off workers; and to ensure that life necessities were met weekly while the worker sought employment.

30. State unemployment systems and benefits were joint federal and state enterprises administered by the State Workforce Agency ("SWA") of a given state and largely financed by taxes on private employers located in the state. SWAs administered UI programs in accordance with federal laws and regulations. Each state set its own additional requirements for eligibility, benefit amounts, and length of time benefits were paid. Generally, UI weekly benefit amounts were based on a percentage of a lawful worker's earnings over a base period. When state unemployment benefits were exhausted, the U.S. Department of Labor ("DOL") could supplement them with federal funds. In Ohio, the SWA was the Office of Unemployment Insurance Operations, which was part of the Ohio Department of Job and Family Services ("ODJFS"). In Arizona, the SWA was the Arizona Department of Economic Security ("DES"). In California, the SWA was the Employment Development Department ("EDD"). In Pennsylvania, the SWA was the Department of Labor & Industry ("PDL"). In Maryland, the SWA is Maryland Department of Labor, Division of Unemployment Insurance ("MDL").

31. Because of COVID-19, these SWAs' ability to provide UI benefits was expanded. On or about March 13, 2020, the President declared the ongoing COVID-19 pandemic of sufficient severity and magnitude to warrant an emergency declaration for all states, tribes, territories, and the District of Columbia, pursuant to section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. §§ 5121-5207. The FFCRA provided additional flexibility for state UI agencies and additional administrative funding to respond to the COVID-19 pandemic. The CARES Act expanded the SWAs' ability to provide UI for many workers impacted by COVID-19, including for workers who are not ordinarily eligible for UI

8

benefits. The CARES Act provided for new programs: Pandemic Unemployment Assistance ("PUA"); Federal Pandemic Unemployment Compensation ("FPUC"); and Pandemic Emergency Unemployment Compensation ("PEUC"), among others (collectively, "Pandemic UI").

32. PUA provided for up to 39 weeks of benefits to individuals who were self-employed, seeking part-time employment, or otherwise would not qualify for regular or extended benefits under state or federal law or PEUC under section 2107 of the CARES Act. Coverage included individuals who exhausted all rights to regular UI benefits or extended benefits under state or federal law or PEUC. Under the PUA provisions of the CARES Act, a person who was a business owner, self-employed worker, independent contractor, or gig worker qualified for PUA benefits administered by ODJFS, DES, EDD, PDL, and MDL if the individual previously performed such work in Ohio, Arizona, California, Pennsylvania or Maryland and was unemployed, partially unemployed, unable to work, or unavailable to work due to a COVID-19-related reason.

33. The eligible timeframe to receive PUA was from weeks of unemployment beginning on or after January 27, 2020, through December 31, 2020.

34. FPUC provided individuals who were collecting regular UI, PEUC, and PUA with an additional $600 per week from April 5, 2020 (or the next date after the respective state had an established agreement with the federal government), through July 31, 2020.

35. PEUC provided for up to 13 weeks of benefits to individuals who had exhausted regular UI under state or federal law; had no rights to regular UI under any other state or federal law; were not receiving UI under the UI laws of Canada; and were able to work, available for work, and actively seeking work. The eligible timeframe to receive PEUC was from April 5,

2020 (or the next date after the respective state had an established agreement with the federal government), through July 31, 2020.

36.     To obtain Pandemic UI, an individual could apply online through ODJFS's, DES's, or EDD's website, the servers for which were in the states of Virginia and California. Claimants answered various questions to establish their eligibility. Claimants were required to provide personal identifying information, which included their name, mailing address, gender, email, phone number, social security number, and date of birth (collectively, "personal identification information"). Moreover, claimants had to identify a qualifying occupational status and COVID-19-related reason for being unemployed. Claimants could also submit several documents as evidence of their income.

37.     The Ohio and Pennsylvania SWAs used Bank 1 to administer Pandemic UI benefits. If ODJFS or PDL approved the claimant's application, Bank 1 mailed a debit card to the claimant. Bank 1 thereafter loaded benefits on the claimant's card at certain intervals. The Ohio and Pennsylvania SWAs also allowed a claimant to receive UI benefits through direct deposit into a bank account of the claimant's designation.

38.     The Arizona, California, and Maryland SWAs used Bank 2 to administer Pandemic UI benefits. If DES, EDD, or MDL approved the claimant's application, Bank 2 mailed a debit card to the claimant. Bank 2 thereafter loaded benefits on the claimant's card at certain intervals. The Arizona SWA also allowed a claimant to receive UI benefits through direct deposit into a bank account of the claimant's designation.

10

<u>COUNT 1</u>
(Conspiracy to Commit Wire Fraud, 18 U.S.C. § 1349)

The Grand Jury charges:

39.    The factual allegations contained in paragraphs 1 through 22 of this Indictment are incorporated by reference as if stated fully herein.

<u>The Tax Conspiracy and Scheme to Defraud</u>

40.    From in or around 2019, through in or around June 2024, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendants JUNERA LASHAE HOLT, SR., DIVANTE HOLT, and RICHARD HENRY, and others known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate, and agree with each other to commit a federal fraud offense, that is to knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, to knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

<u>The Objects and Purposes of the Tax Conspiracy and Scheme</u>

41.    The objects and purposes of the conspiracy and scheme included, but were not limited to, the following: (a) obtaining money from the IRS by filing fraudulent tax documents in the names of the conspirators and their entities and in the names of identity theft victims, (b) diverting money from the victims' tax refunds for the conspirators' use, (c) preventing detection of the conspiracy and scheme, and (d) enriching the conspirators and their designees.

11

<u>Manner and Means of the Tax Conspiracy and Scheme</u>

42.     It was part of the conspiracy and scheme that:

a.      The conspirators sought out identifying information for persons on whose behalf they could file fraudulent tax returns.

b.      DIVANTE HOLT and HENRY recruited clients for whom JUNERA HOLT could file tax returns.

c.      JUNERA HOLT prepared and filed, and caused to be filed, false and fraudulent Forms 1040 on behalf of taxpayers, acting as a "ghost preparer," omitting her name as the preparer so the taxpayers' returns appeared self-prepared.

d.      JUNERA HOLT grossly overrepresented the extent of federal tax withholdings in the Forms 1040, and thus justified fraudulent refund claims, by falsely claiming that the taxpayers had earned income from the Shell Entities, and had a substantial portion of that purported income withheld, supported by falsified Forms W-2 purportedly issued by the Shell Entities to the taxpayers.

e.      At times, JUNERA HOLT prepared the false Forms 1040 on behalf of clients who had agreed for her to prepare tax returns for them. Often, however, JUNERA HOLT prepared those returns and caused them to filed without reviewing the returns with those clients, or without revealing material details of the returns, including the purported wages earned and withheld, or the amount of the refund that the return sought.

f.      At times, even when clients had authorized Defendants to prepare and file tax returns, unbeknownst to the clients, Defendants concealed the tax refunds to be paid on those returns and directed the clients' refunds to be paid to accounts controlled by the conspirators, including by transferring the funds to prepaid debit cards.

12

g.  At times, Defendants used identifying information of identity theft victims for the fraudulent Forms 1040, including information they had previously received when individuals had provided the information to the conspirators for them to prepare a tax return for a prior year.

h.  The conspirators also used the Shell Entities to falsely claim ERC credits, with JUNERA HOLT preparing and filing, and causing to be filed, false employment tax returns, including Forms 941, 944, and 7200, for the Shell Entities, causing the IRS to pay the Shell Entities substantial sums under false pretenses.

<u>Acts in Furtherance of the Tax Conspiracy and Scheme</u>

43.  In furtherance of the conspiracy and scheme, and to accomplish the objects and purposes and conceal the existence thereof, a member of the conspiracy committed and caused to be committed, in the Northern District of Ohio, and elsewhere, the following acts, among others:

44.  On or about February 12, 2020, JUNERA HOLT caused a fraudulent 2019 Form 1040 in the name of A.A. to be filed with the IRS.

45.  On or about March 4, 2020, JUNERA HOLT caused the U.S. Treasury to deposit A.A.'s 2019 tax refund of approximately $7,122 onto a Bank 5 prepaid debit card in A.A.'s name.

46.  On or about March 5, 2020, JUNERA HOLT used the Bank 5 prepaid debit card in A.A.'s name, loaded with A.A.'s 2019 tax refund money, to make a payment of approximately $588.41 on her vehicle, a Chevrolet Camaro.

47.  On or about February 21, 2021, JUNERA HOLT caused a fraudulent 2020 Form 1040 to be filed in her own name, with a falsified Form W-2, claiming wages earned from a Shell Entity, and claiming substantial taxes had been withheld.

48.     On or about January 13, 2022, JUNERA HOLT caused a fraudulent 2020 Form 944 to be filed for R & J Southern Style Cooking LLC, claiming ERC credits to which JUNERA HOLT was not entitled.

49.     On or about January 19, 2022, JUNERA HOLT caused a fraudulent 2021 Form 944 to be filed for R & J Southern Style Cooking LLC, claiming ERC credits to which JUNERA HOLT was not entitled.

50.     On or about January 24, 2022, JUNERA HOLT caused a fraudulent 2021 Form 1040 to be filed in her own name, with a falsified Form W-2, claiming wages earned from a Shell Entity, and claiming substantial taxes had been withheld.

51.     On or about April 11, 2022, JUNERA HOLT caused a fraudulent Form 941 for the quarter ending September 2021 to be filed for R & J Southern Style Cooking LLC, claiming ERC credits to which JUNERA HOLT was not entitled.

52.     On or about October 15, 2022, JUNERA HOLT and HENRY exchanged the following text messages:

| Approximate Time | Sender | Recipient | Content |
|---|---|---|---|
| 10:59 PM | HENRY | JUNERA HOLT | Send [A.A.]'s here: Routing: [#####]2582 Account: [########]1005 [HENRY's Bank 1 account] |
| 11:00 PM | HENRY | JUNERA HOLT | Send [A.A.]'s taxes here I just added her to my account temporarily |

53.     On or about January 3, 2023, JUNERA HOLT and HENRY exchanged the following text messages:

| Approximate Time | Sender | Recipient | Content |
|---|---|---|---|
| 4:45 PM | JUNERA HOLT | HENRY | Where is [J.R.]'s taxes going… did you get him a card or did i |
| 4:45 PM | JUNERA HOLT | HENRY | Is your account still good |

14

| Approximate Time | Sender | Recipient | Content |
|---|---|---|---|
| 6:21 PM | HENRY | JUNERA HOLT | U got him a card |
| 6:21 PM | HENRY | JUNERA HOLT | My account is still good |

54.     On or about January 18, 2023, JUNERA HOLT caused a fraudulent 2022 Form 1040 to be filed in her own name, with a falsified Form W-2, claiming wages earned from a Shell Entity, and claiming substantial taxes had been withheld.

55.     On or about January 18, 2023, JUNERA HOLT caused a fraudulent 2022 Form 1040 in the name of D.C. to be filed, requesting a tax refund of approximately $8,172.

56.     On or about January 23, 2023, JUNERA HOLT caused a fraudulent 2022 Form 1040 in the name of A.A. to be filed, requesting a tax refund of approximately $7,096.

57.     On or about January 31, 2023, JUNERA HOLT caused a fraudulent 2022 Form 1040 in the name of DIVANTE HOLT to be filed, requesting a tax refund of approximately $10,036.

58.     On or about February 6, 2023, JUNERA HOLT caused a fraudulent 2022 Form 1040 in the name of J.R. to be filed, requesting a tax refund of approximately $8,375.

59.     On or about February 27, 2023, JUNERA HOLT caused a fraudulent 2022 Form 1040 in the name of B.S. to be filed, requesting a tax refund of approximately $8,945.

60.     On or about February 28, 2023, JUNERA HOLT and DIVANTE HOLT exchanged the following text messages:

| Approximate Time | Sender | Recipient | Content |
|---|---|---|---|
| 6:04 PM | DIVANTE HOLT | JUNERA HOLT | What pin did the irs ask for for [A.N.]? |
| 6:05 PM | JUNERA HOLT | DIVANTE HOLT | An ip pin<br>Identity protection pin |
| 6:06 PM | DIVANTE | JUNERA | Oh ok. Lemme ssee if I can change her phone number |

15

| Approximate Time | Sender | Recipient | Content |
|---|---|---|---|
| | HOLT | HOLT | first |
| 6:15 PM | DIVANTE HOLT | JUNERA HOLT | [A.N.] id me-<br>Email: [A.N.][####]@gmail.com<br>Pass: [password redacted]<br>##I have the number to get the pin so contact me before logging in to id##### |

61. On or about March 11, 2023, DIVANTE HOLT and JUNERA HOLT caused a fraudulent tax return for A.N. to be filed, claiming approximately $51,713 in wages, with approximately $12,411 in withheld taxes, from R and Js Used Car Sales LLC, requesting an approximately $7,963 refund.

62. On or about June 29, 2024, JUNERA HOLT caused a fraudulent 2023 Form 1040 to be filed in her own name, with a falsified Form W-2, claiming wages earned from a Shell Entity, and claiming substantial taxes had been withheld.

All in violation of Title 18, United States Code, Section 1349.

COUNTS 2-9
(Wire Fraud, 18 U.S.C. §§ 1343 and 2)

The Grand Jury further charges:

63. The factual allegations contained in Count 1 of this Indictment are incorporated by reference as if stated fully herein.

Execution of the Scheme

64. On or about the following dates, in the Northern District of Ohio, Eastern Division, and elsewhere, the following Defendants, aiding and abetting one another, having devised and intended to devise the foregoing scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, for the purpose of executing the foregoing scheme and artifice to defraud, and attempting to do so, knowingly caused to be transmitted the following writings, signs, signals,

16

pictures, and sounds by means of wire communications in interstate commerce, to wit, the following electronically-filed submissions of the following forms to the IRS, each transmission constituting a separate count of this Indictment:

| Count | Defendant | Date Filed With IRS | Description |
|-------|-----------|--------------------|-------------|
| 2 | JUNERA LASHAE HOLT, SR. | January 13, 2022 | Form 944 for R & J Southern Style Cooking LLC, for tax period ending December 2020 |
| 3 | JUNERA LASHAE HOLT, SR. | April 11, 2022 | Form 941 for R & J Southern Style Cooking LLC, for tax period ending September 2021 |
| 4 | JUNERA LASHAE HOLT, SR. | January 19, 2022 | Form 944 for R & J Southern Style Cooking LLC, for tax period ending December 2021 |
| 5 | JUNERA LASHAE HOLT, SR. | January 18, 2023 | Form 1040 filed in the name of D.C. for tax year 2022, requesting a tax refund of approximately $8,172 |
| 6 | JUNERA LASHAE HOLT, SR.; RICHARD HENRY | January 23, 2023 | Form 1040 filed in the name of A.A. for tax year 2022, requesting a tax refund of approximately $7,096 |
| 7 | JUNERA LASHAE HOLT, SR. DIVANTE HOLT | January 31, 2023 | Form 1040 filed in the name of DIVANTE HOLT for tax year 2022, requesting a tax refund of approximately $10,036 |
| 8 | JUNERA LASHAE HOLT, SR. RICHARD HENRY | February 6, 2023 | Form 1040 filed in the name of J.R. for tax year 2022, requesting a tax refund of approximately $8,375 |
| 9 | JUNERA LASHAE HOLT, SR. | February 27, 2023 | Form 1040 filed in the name of B.S. for tax year 2022, requesting a tax refund of approximately $8,945 |

All in violation of Title 18, United States Code, Sections 1343 and 2.

COUNTS 10-14
(Aiding and Assisting in the Preparation of False Tax Returns, 26 U.S.C. § 7206(2))

The Grand Jury further charges:

65. The factual allegations contained in Count 1 of this Indictment are incorporated by reference as if stated fully herein.

66. On or about the following dates, in the Northern District of Ohio, Eastern Division, and elsewhere, the following Defendants, together and with others, willfully aided and assisted in, and procured, counseled, and advised the preparation and presentation to the Internal

17

Revenue Service, of U.S. Individual Income Tax Returns, Forms 1040, for calendar year 2022, for the following taxpayers, which were false and fraudulent as to a material matter, to wit: the tax returns included one or more false Forms W-2, reporting fictitious wages paid and federal taxes withheld from Forms 1040 for the tax year 2022, whereas, the following Defendants then and there knew, that one or more of Forms W-2 included with the tax returns were false, each tax return constituting a separate count of this Indictment:

| Count | Defendant | Taxpayer | Filing Date |
|---|---|---|---|
| 10 | JUNERA LASHAE HOLT, SR. | D.C. | January 18, 2023 |
| 11 | JUNERA LASHAE HOLT, SR. RICHARD HENRY | A.A. | January 23, 2023 |
| 12 | JUNERA LASHAE HOLT, SR. DIVANTE HOLT | DIVANTE HOLT | January 31, 2023 |
| 13 | JUNERA LASHAE HOLT, SR. RICHARD HENRY | J.R. | February 6, 2023 |
| 14 | JUNERA LASHAE HOLT, SR. | B.S. | February 27, 2023 |

All in violation of Title 26, United States Code, Section 7206(2).

<u>COUNTS 15-20</u>
(Filing a False Tax Return, 26 U.S.C. § 7206(1))

The Grand Jury further charges:

67.    The factual allegations contained in Count 1 of this Indictment are incorporated by reference as if stated fully herein.

68.    On or about the dates specified below, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant JUNERA LASHAE HOLT, SR., willfully made and subscribed and filed and caused to be filed with the Internal Revenue Service, U.S. Individual Income Tax Returns, Forms 1040, for each of the tax years set forth below, which were verified by a written declaration that they were made under the penalties of perjury and which JUNERA HOLT did not believe to be true and correct as to every material matter, to wit:

a.     JUNERA HOLT filed the following false employment tax returns, each return constituting a separate count of this Indictment:

| Count | Entity | Date Filed | Tax Period | Form Type | False Material Matters |
|---|---|---|---|---|---|
| 15 | R & J Southern Style Cooking LLC | January 13, 2022 | 2020 | Form 944 | Line 1 – Wages, tips, and other compensation<br><br>Line 10h – Total deposits, deferrals, and refundable credits less advances<br><br>Line 12 – Overpayment |
| 16 | R & J Southern Style Cooking LLC | April 11, 2022 | Quarter ending September 2021 | Form 941 | Line 1 – Number of employees<br><br>Line 2 – Wages, tips, and other compensation<br><br>Line 13g – Total deposits and refundable credits<br><br>Line 15 – Overpayment |
| 17 | R & J Southern Style Cooking LLC | January 19, 2022 | 2021 | Form 944 | Line 1 – Wages, tips, and other compensation<br><br>Line 10j – Total deposits and refundable credits less advances<br><br>Line 12 – Overpayment |

b.     JUNERA HOLT filed false Forms 1040 in her own name that attached false and fraudulent Forms W-2 reflecting high withholding amounts to generate refunds to which JUNERA HOLT was not entitled, each return constituting a separate count of this Indictment:

| Count | Date Filed | Tax Year | False Material Matters |
|---|---|---|---|
| 18 | February 21, 2021 | 2020 | False Form W-2 from Shell Entity 1. |
| 19 | January 24, 2022 | 2021 | False Form W-2 from Uhuru Logistics LLC, and R & J Southern Style Cooking LLC. |
| 20 | January 18, 2023 | 2022 | False Form W-2 from Uhuru Logistics LLC. |

All in violation of Title 26, United States Code, Section 7206(1).

19

COUNT 21
(Conspiracy to Commit Mail Fraud, Wire Fraud, and Bank Fraud, 18 U.S.C. § 1349)

The Grand Jury further charges:

69.    The factual allegations contained in paragraphs 1 through 14 and 23 through 38 of this Indictment are incorporated by reference as if stated fully herein.

70.    From in or around May 2020, through in or around February 2022, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendants JUNERA LASHAE HOLT, SR., RICHARD HENRY, and DIVANTE HOLT, did knowingly and intentionally combine, conspire, confederate and agree with each other, and with others both known and unknown to the Grand Jury, to commit federal offenses, that is, to knowingly, and with intent to defraud, devise, and intend to devise, a scheme and artifice to obtain money and property, including moneys and funds owned by, and under the custody and control of, a financial institution, from the DOL, the SBA, and state SWAs, all by means of false and fraudulent pretenses, representations and promises, and to do the following:

a.    for the purpose of executing and attempting to execute the scheme and artifice to defraud, to place, and cause to be placed, in any depository for mail matter, any matter and thing to be sent and delivered by the Postal Service, and take and receive from the Postal Service, any such matter and thing delivered by the Postal Service, in violation of Title 18, United States Code, Section 1341 (Mail Fraud);

b.    for the purpose of executing and attempting to execute the scheme and artifice to defraud, to cause to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343 (Wire Fraud); and

20

c.     to participate in said scheme and artifice to defraud federally insured financial institutions, and to obtain moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of federally insured financial institutions by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344 (Bank Fraud).

### Objects and Purposes of the Conspiracy and Scheme

71.    The objects and purposes of the conspiracy and scheme were to: (a) obtain COVID-19 pandemic stimulus funds to which the conspirators were not entitled from DOL, state SWAs, the SBA, and participating PPP lenders; (b) unlawfully enrich the conspirators and their designees; and (c) prevent detection of the conspiracy and scheme.

### Manner and Means of the Conspiracy and Scheme

72.    It was part of the conspiracy and scheme that:

a.    Defendants and their co-conspirators submitted and caused to be submitted applications to state SWAs, including through interstate wire transmissions, seeking Pandemic UI benefits in the names of Defendants, their co-conspirators, and identity theft victims, including victims whose information the conspirators had obtained through preparing, and offering to prepare, federal tax returns.

b.    Defendants and their co-conspirators knowingly made and caused to be made materially false statements and omissions regarding employment history, residency, and other information on the Pandemic UI benefits applications, including information about who would receive the benefits, to make them appear eligible to receive Pandemic UI benefits.

c.    As a result of Defendants' and their co-conspirators' false and fraudulent Pandemic UI benefits applications, Defendants caused state SWAs to approve Defendants' and their co-conspirators' applications for Pandemic UI benefits.

21

d.     Defendants and their co-conspirators thereby caused Bank 1 and Bank 2 to issue and mail debit cards, and caused Bank 1 and Bank 2 to fund the accounts of those cards with Pandemic UI benefits, which they were not qualified and authorized to receive, including substantial funds purportedly issued to identity theft victims, but added to debit card accounts possessed and used by Defendants and their co-conspirators without lawful authority.

e.     Defendants and their co-conspirators also thereby caused some state SWAs to issue Pandemic UI benefits, which they were not qualified or authorized to receive, via direct deposit into accounts of Defendants and their co-conspirators' choosing.

f.     Defendants submitted and caused to be submitted, including through interstate wire transmissions, fraudulent PPP loan applications to participating PPP lenders in Defendant's and others' names, and in the name of R & J Southern Style Cooking LLC, which applications contained materially false statements and omissions regarding the purported businesses.

g.     As a result of the fraudulent PPP loan applications, Defendants caused participating PPP lenders to issue PPP loan funds to bank accounts of Defendants' and their co-conspirators' choosing, thereby obtaining PPP loan proceeds they were not qualified or authorized to receive.

h.     JUNERA HOLT and DIVANTE HOLT also submitted and caused to be submitted fraudulent EIDL applications to the SBA, in the names of certain Shell Entities and sole proprietorships, which contained materially false statements and omissions regarding the purported businesses.

## Acts in Furtherance of the Conspiracy and Scheme

73.    In furtherance of the conspiracy and scheme, and to accomplish the objects and purposes and conceal the existence thereof, a member of the conspiracy committed and caused to be committed, in the Northern District of Ohio, and elsewhere, the following acts, among others:

### D.C. Ohio PUA Application

74.    On or about May 27, 2020, JUNERA HOLT submitted and caused to be submitted to the Ohio SWA an electronic application for Pandemic UI benefits in the name of D.C., falsely seeking Pandemic UI benefits in D.C.'s name.

75.    On or about July 12, 2020, JUNERA HOLT submitted and caused to be submitted to the Ohio SWA a Continued Claim Form for the week ending July 11, 2020, that falsely sought Pandemic UI benefits in D.C.'s name.

### D.C. Maryland PUA Application

76.    On or about June 8, 2020, JUNERA HOLT submitted and caused to be submitted to the Maryland SWA an electronic application for Pandemic UI benefits in the name of D.C., falsely seeking Pandemic UI benefits in D.C.'s name.

77.    On or about June 10, 2020, JUNERA HOLT caused Bank 2 to send a Bank 2-issued debit card in D.C.'s name via regular U.S. mail to a residential address controlled by JUNERA HOLT in Lorain, Ohio.

### D.C. Arizona PUA Application

78.    On or about September 13, 2020, JUNERA HOLT submitted and caused to be submitted to the Arizona SWA an electronic application for Pandemic UI benefits in the name of D.C., falsely seeking Pandemic UI benefits in D.C.'s name.

23

79.     On or about September 15, 2020, JUNERA HOLT caused Bank 2 to send a Bank 2-issued debit card in the name of D.C. via regular U.S. mail to a residential address controlled by JUNERA HOLT in Lorain, Ohio.

*R.H. Ohio PUA Application*

80.     On or about May 27, 2020, JUNERA HOLT and HENRY submitted and caused to be submitted to the Ohio SWA an electronic application for Pandemic UI benefits in the name of R.H., falsely seeking Pandemic UI benefits in R.H.'s name.

81.     On or about May 27, 2020, JUNERA HOLT and HENRY submitted and caused to be submitted PUA supporting documentation to the Ohio SWA, including R.H.'s Ohio driver's license.

82.     On or about May 12, 2021, HENRY used a Bank 5 Visa Card in R.H.'s name to book a hotel on Priceline for approximately $139.02.

83.     On or about July 12, 2020, JUNERA HOLT and HENRY submitted and caused to be submitted to the Ohio SWA a Continued Claim Form for the week ending July 11, 2020, that falsely sought Pandemic UI benefits in R.H.'s name.

84.     On or about March 29, 2021, JUNERA HOLT and HENRY submitted and caused to be submitted to the Ohio SWA a Continued Claim Form for the week ending March 27, 2021, that falsely sought Pandemic UI benefits in R.H.'s name.

*A.A. Ohio PUA Application*

85.     On or about May 29, 2020, JUNERA HOLT and HENRY submitted and caused to be submitted to the Ohio SWA an electronic application for Pandemic UI benefits in the name of A.A., falsely seeking Pandemic UI benefits in A.A.'s name, which they caused to be transferred to a Bank 5-issued prepaid debit card in A.A.'s name, which had been sent to an address controlled by JUNERA HOLT.  The Bank 5 card, which received $25,848 in Ohio

Pandemic UI funds, is the same Bank 5 card that earlier in 2020 received a tax refund in A.A.'s name and was used to make a payment on a Chevrolet Camaro registered to JUNERA HOLT.

86. On or about June 4, 2020, JUNERA HOLT and HENRY submitted and caused to be submitted PUA supporting documentation to the Ohio SWA for A.A.'s application, including A.A.'s social security card and Ohio driver's license.

87. On or about December 20, 2020, JUNERA HOLT and HENRY submitted and caused to be submitted to the Ohio SWA a Continued Claim Form for the week ending December 19, 2020, that falsely stated A.A. was still totally or partially unemployed because of the COVID-19 Pandemic.

88. On or about February 7, 2021, HENRY and JUNERA HOLT used A.A.'s Bank 5 card for a hotel purchase at Priceline for approximately $80.97 for a hotel reservation in HENRY's name.

*B.S. Ohio PUA Application*

89. On or about June 7, 2020, JUNERA HOLT submitted and caused to be submitted to the Ohio SWA an electronic application for Pandemic UI benefits in the name of B.S., falsely seeking Pandemic UI benefits in B.S.'s name.

90. On or about July 12, 2020, JUNERA HOLT submitted and caused to be submitted to the Ohio SWA a Continued Claim Form for the week ending July 11, 2020, that falsely sought Pandemic UI benefits in B.S.'s name.

91. On or about July 5, 2021, JUNERA HOLT submitted and caused to be submitted to the Ohio SWA a Continued Claim Form for the week ending July 3, 2021, that falsely sought Pandemic UI benefits in B.S.'s name.

All in violation of Title 18, United States Code, Section 1349.

25

<u>COUNTS 22-34</u>
(Wire Fraud, 18 U.S.C. §§ 1343 and 2)

The Grand Jury further charges:

92. The factual allegations contained in Count 21 of this Indictment are incorporated by reference as if stated fully herein.

<u>Execution of the Scheme</u>

93. On or about the following dates, in the Northern District of Ohio, Eastern Division, and elsewhere, the following Defendants, aiding and abetting one another, having devised and intended to devise the foregoing scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, for the purpose of executing the foregoing scheme and artifice to defraud, and attempting to do so, knowingly caused to be transmitted the following writings, signs, signals, pictures, and sounds by means of wire communications in interstate commerce, across state lines, to wit:

a. the following submission of a Pandemic UI benefit Continued Claim Form for the week ending July 3, 2021:

| Count | Defendant | Date | Name on PUA Application |
|---|---|---|---|
| 22 | JUNERA LASHAE HOLT, SR. | July 5, 2021 | B.S. |

b. the following submissions of fraudulent PPP loan applications, each transmission constituting a separate count of this Indictment:

| Count | Defendant | Date | Transmission Description |
|---|---|---|---|
| 23 | JUNERA LASHAE HOLT, SR. | May 5, 2021 | Electronic submission of PPP loan application in the name of Person 3. |
| 24 | JUNERA LASHAE HOLT, SR.; DIVANTE HOLT | April 21, 2021 | Electronic submission of PPP loan application in the name of DIVANTE HOLT. |
| 25 | JUNERA LASHAE | February 7, | Electronic submission of PPP loan |

26

| Count | Defendant | Date | Transmission Description |
|---|---|---|---|
|  | HOLT, SR.; RICHARD HENRY | 2021 | application in the name of HENRY and Shell Entity 6. |
| 26 | JUNERA LASHAE HOLT, SR.; RICHARD HENRY | March 26, 2021 | Electronic submission of PPP loan application in the name of HENRY and Henry Home Improvements. |
| 27 | JUNERA LASHAE HOLT, SR.; RICHARD HENRY | April 16, 2021 | Electronic submission of PPP loan application in the name of HENRY and Henry Home Improvements. |
| 28 | JUNERA LASHAE HOLT, SR. | April 2, 2021 | Electronic submission of PPP loan application in the name of Person 4 and Shell Entity 7. |
| 29 | JUNERA LASHAE HOLT, SR. | April 8, 2021 | Electronic submission of PPP loan application in the name of Person 4 and Shell Entity 7. |
| 30 | JUNERA LASHAE HOLT, SR. | April 18, 2021 | Electronic submission of PPP loan application in the name of Person 4 and Shell Entity 6. |
| 31 | JUNERA LASHAE HOLT, SR.; RICHARD HENRY | April 6, 2021 | Electronic submission of PPP loan application in the name of R.H. and Shell Entity 8. |
| 32 | JUNERA LASHAE HOLT, SR.; RICHARD HENRY | April 11, 2021 | Electronic submission of PPP loan application in the name of R.H. and Shell Entity 8. |
| 33 | JUNERA LASHAE HOLT, SR. | February 16, 2021 | Electronic submission of PPP loan application in the name of JUNERA HOLT and R & J Southern Style Cooking LLC. |
| 34 | JUNERA LASHAE HOLT, SR. | March 26, 2021 | Electronic submission of PPP loan application in the name of JUNERA HOLT and R & J Southern Style Cooking LLC. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

<u>COUNTS 35-38</u>
(Bank Fraud, 18 U.S.C. §§ 1344 and 2)

The Grand Jury further charges:

94.    The factual allegations contained in Count 21 of this Indictment are incorporated by reference as if fully stated herein.

27

Execution of the Scheme

95.    On or about the following dates, in the Northern District of Ohio, Eastern Division, and elsewhere, the following Defendants, aiding and abetting one another, having participated in the foregoing scheme and artifice to defraud federally insured financial institutions, and to obtain moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of federally insured financial institutions by means of false and fraudulent pretenses, representations, and promises, knowingly executed and attempted to execute the scheme to defraud by causing the following acts, each transfer of funds from the below financial institutions constituting a separate count of this Indictment:

| Count | Defendant | Date | Description of Execution | Financial Institution |
|-------|-----------|------|--------------------------|-----------------------|
| 35 | RICHARD HENRY | June 18, 2020 | Debit of approximately $409.60 of fraudulently obtained Pandemic UI benefits to purchase shoes using PayPal. | Bank 2 |
| 36 | RICHARD HENRY | June 25, 2020 | Debit of approximately $1,128.05 of fraudulently obtained Pandemic UI benefits to make a purchase with Comfort Inn. | Bank 2 |
| 37 | JUNERA LASHAE HOLT, SR. | June 30, 2021 | Deposit from Ohio's Department of Jobs and Family Services of approximately $358.50 in Pandemic UI benefits fraudulently obtained in B.S.'s name onto a Bank 1 debit card in B.S.'s name | Bank 1 |
| 38 | JUNERA LASHAE HOLT, SR. | July 1, 2021 | Cash withdrawal of approximately $294 of Pandemic UI benefits using debit card in B.S.'s name and account number. | Bank 1 |

All in violation of Title 18, United States Code, Sections 1344 and 2

28

COUNTS 39-42
(Aggravated Identity Theft, 18 U.S.C. §§ 1028A(a)(1) and 2)

The Grand Jury further charges:

96.    The factual allegations contained in Counts 1, 21, 22, 37, and 38 of this Indictment are incorporated by reference as if fully stated herein.

97.    On or about the following dates, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant JUNERA LASHAE HOLT, SR., did knowingly transfer, possess, and use, and did aid and abet the transfer, possession, and use of, a means of identification of another person, without lawful authority, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), listed below, knowing that the means of identification belonged to another actual person, each instance of transfer, possession, and use constituting a separate count of this Indictment:

| Count | Date | Description; Predicate Felony |
|---|---|---|
| 39 | June 30, 2021 | Deposit from ODJFS of approximately $358.50 in Pandemic UI benefits, fraudulently obtained in B.S.'s name, onto a Bank 1 debit card in B.S.'s name and account number; Fraud Conspiracy in violation of 18 U.S.C. § 1349 (as charged in Count 21) and Bank Fraud in violation of 18 U.S.C. § 1344 (as charged in Count 37). |
| 40 | July 1, 2021 | Cash withdrawal of approximately $294 of Pandemic UI benefits using debit card in B.S.'s name and account number; Fraud Conspiracy in violation of 18 U.S.C. § 1349 (as charged in Count 21) and Bank Fraud in violation of 18 U.S.C. § 1344 (as charged in Count 38). |
| 41 | July 5, 2021 | Submission of a Continued Claim Form to the Ohio SWA using the name and Claimant ID number of B.S.; Fraud Conspiracy in violation of 18 U.S.C. § 1349 (as charged in Count 21) and Wire Fraud in violation of 18 U.S.C. § 1343 (as charged in Count 22). |
| 42 | May 17, 2023 | Possession of multiple individuals' names, and social security numbers at her home; Wire Fraud Conspiracy in violation of 18 U.S.C. § 1349 (as charged in Count 1). |

All in violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

29

<u>COUNTS 43-44</u>

(Engaging in Monetary Transactions in Criminally Derived Property, 18 U.S.C. §§ 1957 and 2)

The Grand Jury further charges:

98.     The factual allegations contained in Count 21 of this Indictment are incorporated by reference as if stated fully herein.

99.     On or about the below dates, in the Northern District of Ohio, Eastern Division, and elsewhere, RICHARD HENRY, aiding and abetting others known and unknown to the Grand Jury, did knowingly engage and attempt to engage in the following monetary transactions, by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, to wit, Wire Fraud and Bank Fraud, in violation of Title 18, United States Code, Sections 1343 and 1344, each transaction constituting a separate count of this Indictment:

| Count | Date | Amount | Transaction Description |
|-------|------|--------|-------------------------|
| 43 | July 2, 2021 | $105,139.69 | Deposit of a Bank 3 Official Bank Check into HENRY's and Person 4's joint personal bank account at Bank 4 ending in 1521. |
| 44 | July 13, 2021 | $98,139.69 | Deposit of a Bank 4 cashier's check into HENRY's personal bank account at Bank 1 ending in 1005. |

All in violation of Title 18, United States Code, Sections 1957 and 2.

<u>FORFEITURE</u>

The Grand Jury further charges:

100.     The allegations of Counts 1 through 9, 21 through 38, 43, and 44 are hereby re-alleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1) and (a)(2), and Title 28, United States Code, Section 2461(c).  As a result of the foregoing offenses, Defendants JUNERA LASHAE HOLT, SR., DIVANTE HOLT, and RICHARD HENRY shall forfeit to the

30

United States, and any property, real and personal, which constitutes or is derived from proceeds traceable to the commission of the offenses charged in Counts 1 through 9 and 21 through 34; any property constituting or derived from proceeds they obtained directly or indirectly as a result of the violations charged in Counts 35 through 38; and any property, real or personal involved in or used in violation of the offenses charged in Counts 43 and 44.

SUBSTITUTE ASSETS

If, as a result of any act or omission of Defendants, any property subject to forfeiture:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

the United States intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of Defendants up to the value of the forfeitable property described above.

A TRUE BILL.

Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.

31